Good morning. Christopher Stender, Counsel for the Petitioner, and I'd like to reserve two minutes of my time for rebuttal. This is an appeal from the September 7, 2004, decision of the Board of Immigration Appeals affirming without opinion the May 21, 2003, decision of the immigration judge to revoke the asylum status of the petitioner and his family. It's our contention that the immigration judge lacked jurisdiction to reopen their case and revoke the 1995 grant of asylum. Let me ask you something about that. Let's assume that the change of status proceeding had been completed. Is there any question the I.J. would have had authority to handle subsequent proceedings? Let's say the fraud came out after that and there was a termination after that proceeding. Would the I.J. have had jurisdiction? Correct. And that's exactly what the regulations provide for. So why did it not make sense for the director to stay the proceedings and let the I.J. determine the fraud issue? That could have possibly happened, but no decision was ever made by the district director. In fact, up until the present time, still no decision has come from the district director regarding the adjustment of status applications. But would that have been an idle act in light of the I.J.'s ruling? Would it have been an idle act to issue a ruling in light of the fact that the fraud issue was then before the I.J.? No, because it deprived the immigration judge of jurisdiction to consider the adjustment of status. I mean, I understand you're making that argument. I'm trying to see whether, as I recall, the I.J. said that doesn't really make sense. It makes more sense to proceed. And we can get to the technical issue later, but what I'm saying, don't we come to the same place? Had there been a, had they simply issued a decision, if it had been completed, and then went to the I.J., we're in the same place we would be now, would we not? Except whatever the decision was in the change of status would have been issued, but the fraud determination would still have been properly made. The problem with that position is it deprives the immigration judge of the, of jurisdiction over the adjustment of status. No decision was ever made on the adjustment. The asylum, which is the underlying basis for the adjustment of status, was revoked, and the adjustment never had any adjudication on the merits, and there was no ability to renew that adjustment application before the immigration judge. Secondly, the regulations do not provide for the district director to be ignored when sole jurisdiction is clearly vested with the district director, and for the government to come in immigration judge directly with a motion to reopen and revoke the asylum status while the adjustment of status application was still pending with the district director, which is in fact what happened. So most strongly we would assert that there's a jurisdictional issue which is, in our estimation, very clear in the regulations. Counsel, is this, my recollection is that when the government filed its motion to reopen, did your client oppose that at the time? No. So is it your position that this is the kind of jurisdictional defect that can be dealt with even though the motion was not opposed at the time? Yes, because if the court had no jurisdiction, that argument could be brought at any time, and in fact there was a motion to terminate filed before the immigration judge setting out the fact that it was Petitioner's position that the immigration judge had no jurisdiction to revoke the asylum. It, of course, was denied, and the immigration judge went on and made a ruling, but nonetheless it was argued, as it's been argued all the way up during the appeals process, that the judge had no jurisdiction to revoke the asylum. It seems to me a large part of your – I'm sorry. Did you finish? I'm sorry. Yes, I did. Okay. It seems to me a large part of your argument revolves around the question or points to the fact that the IJ had the revocation occurred first, then any change of status would have gone to the IJ, and that therefore the converse is true, and I'm not sure I follow why that's the case. Exactly. It seems to me you're arguing the converse is true, that if the change of status occurs first, then that must be completed before the IJ can deal with the revocation of asylum, and I'm not sure the one follows logically from the other. Well, the regulation on point, ATFR 209.2f, does say that the district director has sole jurisdiction over the adjustment of status, and that same regulation states that it can be, quote, renewed before the immigration judge. So if the district director never makes an adjudication, it can never be renewed before the immigration judge. And in fact, that deprives the petitioner of a form of relief that could have been argued and applied for. Of course, if we just, it's our position that the regulations have been ignored, and it's deprived the petitioner of a form of relief which he was eligible for and was deserving of an adjudication on the merits. The adjustment of status application was pending and is still pending with the district director, but at the time it was referred to immigration court, it had been pending for seven years. And the district director made no decision. Well, let's assume he did have jurisdiction, the IJ did have jurisdiction. Isn't the change of status now kind of moot? Well, if once we correct, at this point it's mooted out, because the adjustment of status was based on the asylee status, so once that's pulled out, then there is no adjustment of status. But nonetheless, the regulations do provide for an orderly adjudication of that petition, which was never done. I've read your regulation argument. I'm not sure I agree with it, but it's putting three regulations together to get to the place you want to be. Let me ask you, where should the government, if the government is advised of fraud, where should the government have gone? What then should they have done? The district director was free to deny the adjustment of status in a written decision. No, but they're not worried about the adjustment of status. The government is concerned because he has been granted a benefit already under fraudulent circumstances, so the government wants to challenge that. So where does the government go? They're not worried about adjustment of status. They want to say that he was never entitled to any status and he ought to leave the country. So where do they go? Well, the fraud has never been established, and the evidence asserted by the government was not sufficient to prove the fraud. I understand your argument. I've read your brief, and I'm not sure I agree with it. But where should the government have gone, under your interpretation of the regulations, to challenge the original grant given because the government now believes it was fraudulent? Ultimately, to the immigration judge. You mean the place they did go, to the immigration judge? Prematurely, yes. It's the correct forum. The immigration judge would have had jurisdiction had the government first obtained the denial from the district director, which was not done. Well, are you saying that we have to go to the immigration judge? Are you suggesting they should have gone to the district director and asked the district director to remand it to the immigration judge so they could then have their hearing on the purported fraud? Well, the regulations are clear on this, that the district director has to go to the immigration judge. Is that a yes or a no? I would say yes. And what regulation do you rely upon that the government has the authority to go to the district director and request that a petition for change of status should be remanded back to the I.J. for consideration of a fraudulent application? ATFR 209.2 F, which we cited in our brief, is very clear on that point. The government's not free to ignore the jurisdiction of the district director and go back to the immigration judge. They are ignoring the regulations. Now, the Congress regulation does exist under ATFR 1242.2 A1C, which gives the immigration judge. So the regulation in our mind is clear. If it's with the district director, he has sole jurisdiction. If it's within the immigration judge, she has sole jurisdiction. I'm curious about one thing procedurally. Are you saying at this point, what would you have this Court do, send it back and then wait for the director to make a decision, then have the I.J. make the same decision? Well, I mean, the regulations are there for a reason. In fact, is that what you're asking us? Yes. Yes. And the regulations are there for a reason, and the government is not free to ignore them. Certainly the regulations are enforced against the petitioner if they're appropriate, and it's not fair for the government to pick and choose which regulations it wants to follow and ignore the jurisdiction of the district director and go back to the immigration judge. Counsel, you're almost out of time. If you want to save a little bit for... Yes, I'll save it. Thank you very much. Thank you. We'll hear from the government. Good morning. May it please the Court, my name is Alison Drucker. I'm representing the United States. This, of course, is a case of aliens who committed fraud by misrepresenting their situation and were thus able to obtain asylum, although they were not, in fact, entitled to it. So far, the Court seems to be focusing on the jurisdiction,  which is one of the two issues that was raised by the petitioner. I think some of the questions indicate some skepticism about the petitioner's view of this, and certainly our view is that there was no error whatsoever in the immigration judge taking jurisdiction over the motion to reopen and granting it. Petitioner has not been able to point to any explicit regulation stating that a pending adjustment application with a DD would prevent the immigration judge from reopening the aliens' case. And some of the regulations that he depends on, in fact, seem to support the government rather than the contrary. For example, 1003.23b1, cited in his brief, has a limitation on the IJ's jurisdiction to reopen vis-a-vis the Board of Immigration Appeals, but not vis-a-vis the DD or any other entity. So it does not help him. Similarly, 1245.2, cited in his brief, gives authority to the immigration judge, not the district director, to adjudicate adjustments when an alien is in proceedings. Now, what happened in this case is a little unusual because of the fraud. So it didn't necessarily follow exactly the same trajectory that most similar cases might. Here, when there was reopening, that reopening put the alien back into proceedings, and therefore, it would be the immigration judge, not the district director after that point, who would have jurisdiction over the adjustment. Sotomayor Would it be fair to say that the regulations don't specifically contemplate this situation at all, one way or the other? There's no precise description of this situation. Blackman That may be so, because it's kind of unusual. But I think that the regulations Kagan And if that is so, where do you fall back to? If the regulations don't precisely cover the situation, what's the general principle that you would fall back on? Blackman Well, the general principle, I mean, this started with the question of can the immigration judge reopen? And the first regulation that I cited seems to say, you know, definitely yes. He can reopen, he or she can reopen, and one of the purposes for reopening would be the revocation of asylum. So that was completely proper. Kennedy Well, couldn't you also say that if the, as counsel has pointed out, that if there's a specific requirement that if the change of status is, or excuse me, if the revocation proceeding has already started and there's a change of status, that that automatically goes to the I.J., and there's no similar statute going the other way, that the I.J. would probably, that there was, it was not contemplated that that would be the director's proceeding would have to complete? Blackman The regulations assume that the immigration judge has precedence, which makes logical sense, because if the person is going to be deported, why would we be worrying about these other applications, you know, collateral events going on? That would, I think we discussed that, that in fact what's happened here is the adjustment application became moot in the course of the proceedings and the entry of an order of deportation. I might add in that connection also, you know, one of the reasons that was given in the I.J.'s decision, or at least alluded to, for the revocation was the notion of firm resettlement in Canada. Now, firm resettlement under the regulations not only bars asylum, it is a reason for mandatory denial of asylum, but it's also mandatory denial of adjustment, not even by reg, but by statute. I think the site is 1859b-4. So there are several reasons why these individuals were not going to be able to get adjustment. Kennedy The difficulty I've had with this case, of course, you know, immigration is a big amorphous pot we're dealing with, and I know that you're doing your best to get the regulations to make it work better so people know what's going on. But every time you get them, there's a need for another one. Now, the theory, as I understand it, that your opposition is pushing for would be the type of theory we would have if the district court handled a case and it went up on appeal to the court of appeals. There's very few things a district court can do because jurisdiction has gone. And that's the argument that because it's over with the district director, nothing can happen. But I'm not sure that particular philosophy fits the immigration process. Under his theory, what you should have done is go over to the district director, have the matter referred, have it brought back to the immigration judge. Then the immigration judge could handle the process because that jurisdiction was only with the district director. Now, how do you respond to that? It might have been a better practice to have this sort of papered differently and have the district director, you know, either stay, you know, formally stay the adjustment proceeding or issue something that said, well, now that it's been reopened, I can't do anything at this time. That's better practice, perhaps, and I'm not even sure it's necessary. But the question is whether it's better practice. Is it mandatory? Now, that's the real issue that we have. Does the government have to go to the district director and get a remand back to the IHA? Not in my understanding, no. And the question is whether it's better practice. And the question is whether it's mandatory. And how do you — what is the reasoning behind your understanding? Well, as you were saying, what the immigration judge is doing takes precedence. And since what he's doing, or she, is — has reopened this, and the whole proceeding on having the asylum status, that is the linchpin of the adjustment application in this case. The theory — your theory isn't one where there's just one piece of jurisdiction that's in this court and that court. Your theory is there's one jurisdiction, but it's in the immigration process as a whole, and that it isn't necessary to go to the district director to get a remand, because the district director is dealing with something different from what the IHA is going to deal with. Is that essentially your argument? Yeah, yeah, yeah. I don't suppose that you have a case that one of our sister circuits have come along and made a decision that helps us one way or the other on that. I'm sorry, not that I have — that comes to mind as I stand here, Your Honor. Don't you hate when they don't do that? It happens. If Your Honors are satisfied about the jurisdictional question, I'll just say briefly, Petitioner's other issue was that the government didn't make an adequate showing of fraud. Now, the test for revocation for fraud is set out at 1208.24a, and the test for revocation for fraud is set out at 1208.24a. The government was established by preponderance of the evidence, which is a pretty modest standard, fraud in the alien's application such that he or she was not eligible for asylum at the time it was granted. And what happened here — I mean, the immigration judge's decision sort of has three different approaches to this question. One was that the supporting documents — you know, once you see that the person who is in charge of the asylum, you see that the statements of the Petitioner's were lies about where they were. They specifically said that — let's see — that they were in India from the 60s to 1991. I think that's at AR-114. And in their testimony in 1995, they also made — they were asked the question about, you know, whether or not the petitioner's had a nexus to any country other than India, and they said no. And then, of course, it came out that they had this resettlement in Canada. Okay. So because of that, they couldn't basically carry their burden of proof, and that was one reason. Another reason was that it was appropriate to take an adverse inference from their failure to testify, and so that could be added to the other points to show that they would not have been eligible for asylum. And thirdly, you have this question about the landed immigrants, firm resettlement. Firm resettlement — excuse me — landed status in Canada is the equivalent of lawful permanent residence in the United States. That is definitely firm resettlement. They were safe there. Under the regulation, as I said before, that is a reason for mandatory denial of asylum. Thank you, counsel. Your time has expired, and we understand your position. You have a little bit of rebuttal time remaining, Mr. Stender. Thank you. We did want to point out that we did have that second jurisdictional objection to the reopening, because the government seeks to waive the 90-day time limit for the motion to reopen and rely on that there was fraud in the petition. It's never been proven what landed immigrant status is in Canada. There's been a bold assertion that it's the same as lawful permanent residence status in the United States. There was no government expert. There was no Canadian expert. There were computer printouts. They were linked by name. There's no explanation what that means or what it is before the immigration judge. And that's the basis for the, quote, lies and fraud that the government wants to use as evidence to show that the petitioners were not eligible. There's a lack of evidence on that point, and it was not sufficient for the government to use it and for the immigration judge to rely on it to reopen the case. It's not sufficient. It's not sufficient. The foundation laid at all as to what they are. That wasn't my question. My question was, are you saying there's no evidence or that the evidence is insufficient? It's inadmissible and insufficient, yes. Okay. Thank you, counsel. The case just argued is submitted, and we appreciate the arguments of both parties. The next case is Asensio v. McKaysey. Thank you.
judges: Wallace, Graber, Schiavelli